IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ASSOCIATION OF UNIT OWNERS
OF MARINA RIVERHOUSE**,

    Plaintiff,

    v.

**STATE FARM FIRE AND CASUALTY
COMPANY**,

    Defendant.

No. 3:11-cv-307-MO

OPINION AND ORDER

**MOSMAN, J.**,

    This case involves an insurance claim by the Association of Unit Owners of Marina Riverhouse (the "Unit Owners") against State Farm Fire and Casualty Company ("State Farm") regarding the alleged "collapse" of wood pilings in two units of the Marina Riverhouse. State Farm now moves for judgment on the pleadings, and alternatively, for summary judgment [5]. State Farm argues that under the relevant policies, there is no coverage because no "collapse" occurred, and regardless, the two-year suit limitation clause contained in the policies bars recovery by the Unit Owners. The Unit Owners argue that the discovery rule applies and so recovery is not barred by the suit limitation clause, and that the "collapse" of the wood pilings constitutes covered loss.

1 – OPINION AND ORDER

On August 2, 2011, I held a hearing on State Farm's motion. I made several rulings at that hearing, and asked the parties to prepare supplemental briefing on the discovery rule issue. Following a careful review of the record, including the supplemental briefs filed by the parties on the discovery rule issue, and for the reasons discussed at the August 2, 2011, hearing and below, I grant State Farm's motion as to the post-1999 insurance policy. I deny State Farm's motion as to the pre-1999 insurance policy because I find that, drawing reasonable inferences in favor of the Unit Owners from the undisputed facts in this case, State Farm has not established that it is entitled to judgment as a matter of law.

## BACKGROUND

Marina Riverhouse was built in 1972. (Pl.'s Resp. in Opp'n to J. on the Pldgs. [14] 2). The property is comprised of eleven buildings consisting of two units per building. (*Id*). The subject of this claim is a riverfront building that houses units 704 and 708. (*Id*.). This building is supported by nine wood pilings. (*Id*.). The Unit Owners allege that in 2009, upon undertaking a reconstruction project on the decks associated with those two units, some of the pilings that had previously been completely hidden from view were exposed. (*Id*.). The Unit Owners allege that the below-grade (underground) portion of three of the pilings "had disintegrated and fallen into pieces." (*Id*.). Therefore, the Unit Owners allege they suffered a "collapse." (*Id*.).

The Unit Owners purchased property insurance from State Farm in 1986, and renewed the policy every year. (*Id*. at 3.). Prior to November of 1999, the policy read in pertinent part:

> We will pay for any accidental direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following . . . hidden decay.

(*Id*.). State Farm later amended the collapse coverage, effective November of 1999. The amended policy reads in pertinent part:

> We insure only for direct loss, to covered property involving the sudden, entire collapse of a building or any part of a building. Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.
>
> The collapse must be directly and immediately caused by only one or more of the following . . . hidden decay of a supporting or weight-bearing member of the building.

(*Id*.). Both policies also provide an identical suit limitation clause that reads in pertinent part:

> No one may bring legal action against us under this insurance unless: … the action is brought within two years after the date on which the accidental direct physical loss occurred.

(*Id*. at 12.).

The Unit Owners filed this claim on or about February 9, 2011, in the Circuit Court of the State of Oregon for Multnomah County, and State Farm removed the case to this Court on March 11, 2011. (Notice of Removal [1] 1).

## LEGAL STANDARD

State Farm moves for judgment on the pleadings under Fed. R. Civ. P. 12(c), or alternatively summary judgment under Fed. R. Civ. P. 56. In considering a motion for judgment on the pleadings the court may not rely on evidence outside the pleadings. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). If outside evidence is considered the motion should be treated as a motion for summary judgment. *Id*. A party is entitled to summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *State of California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003) (quotation omitted). "Where the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (quotation omitted). I have looked to outside evidence in order to resolve State Farm's motion as to the policy in effect before November of 2009, and I therefore apply the summary judgment standard to that portion of the motion.

## DISCUSSION

### I. The Prior Hearing

In a hearing on August 2, 2011, I ruled that the policy language effective after November of 1999 does not cover the type of loss suffered by the Unit Owners, and I therefore granted in part State Farm's motion for judgment on the pleadings. I further ruled that the policy language in effect before November of 2009 is ambiguous in reference to the term "collapse" such that I would resolve it against the drafter to provide for coverage for hidden decay of the pilings. Finally, I held that the discovery rule applies because I found it likely that the Oregon courts would apply the discovery rule to a policy such as the one applicable here when hidden decay is involved. I requested that the parties prepare supplemental briefs regarding the discovery rule issue.

### II. The Discovery Rule

#### A. *Legal Standard*

Under Oregon law, the discovery rule tolls the limitations period under a suit limitation clause until, in the exercise of reasonable care, injury or loss that is covered by the pertinent policy is discovered or should have been discovered. *See, e.g.*, *Greene v. Legacy Emanuel Hosp.*

*& Health Care Ctr.*, 60 P.3d 535, 538 (Or. 2002); *Parker v. Worcester Ins. Co.*, 247 F.3d 1, 4–5 (1st Cir. 2001). In *Greene*, the Oregon Supreme Court held that "actual knowledge that each element of an injury is present" is not required under the discovery rule. 60 P.3d at 539 (quoting *Gaston v. Parsons*, 864 P.2d 1319, 1324 (Or. 1994)) (internal alterations omitted). "[I]f the facts satisfy the 'should have been discovered' standard … then the period of limitations commences notwithstanding the plaintiff's complete failure to acquire actual knowledge of the injury." *Id.* at 539–40. Thus, in order for State Farm to prevail, it must show that the Unit Owners, in the exercise of reasonable care, discovered or should have discovered the damage to the pilings before February of 2009.

Whether or not the injury or loss has been discovered or should have been discovered is "a question of fact." *Cole v. Sunnyside Marketplace, LLC*, 160 P.3d 1, 6 (Or. App. 2007). The issue "can be resolved against the plaintiff on summary judgment only if the plaintiff should have achieved that awareness as a matter of law." *Id*. The inquiry is "how a reasonable person of ordinary prudence would have acted in the same or similar situation." *Gaston*, 864 P.2d at 1324. The inquiry includes whether a plaintiff made "a further inquiry if a reasonable person would have done so." *Id*. "There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge." *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 463 P.2d 770, 776 (Cal. 1970).

**B.**     *Application*

Whether or not discovery occurred before February of 2009 is a factual question that turns on whether the reasonable inferences drawn from the evidence, viewed in the light most favorable to the Unit Owners, is enough that they discovered or should have discovered the

problems with the pilings, or at least should have made "a further inquiry" that would have led them to discover the problems with the pilings at an earlier date.

State Farm proffers the following in support of their argument that the Unit Owners discovered or should have discovered the pilings problems: (1) in 1996, evidence of two floods in the units in question; (2) in 1997, an erosion report commissioned by the Unit Owners' board indicating "diminished support under [the pertinent units]" and that "neglect and lack of commitment to carry out required maintenance over time" was one of the probable causes of the diminished support; (3) in 1999, evidence of "cracking drywall, unlevel floors, gaps between the walls and ceilings"; (4) in 2002, the Myhre Group Architectural Deck Assessment Report that recommended that the decks for the pertinent units be replaced within "0 to 1 year"; (5) in 2007, the Myhre Property Evaluation that was to evaluate all structural components (including the pilings) made no mention of the pilings in its report, but "should have been able to identify them" if it had evaluated the pilings, according to State Farm; and (6) also in 2007, as part of the Myhre Property Evaluation, individual owners' surveys indicated the following problems in the pertinent units: "cracks in upper level drywall," "floors not level on mail level," "a crack … in the vertical junction of the sheetrock…," "wood to earth contact regarding the basement," and "2nd level deck appears to have settled about an inch." (Df.'s Supp. Br. [27] 2–4).

There is no real dispute about the facts here. However, individually and collectively the facts do not support summary judgment because varying reasonable inferences can be drawn from them. First, flooding problems do not put a reasonable person on notice regarding structural problems, let alone piling problems. Second, "diminished support" could be indicative of a number of things, including problems with the decks rather than the pilings, and reasonable minds could differ as to what inferences to draw from such problems. Similarly, evidence of

cracking drywall, unlevel floors, and gaps between ceilings and walls are also not sufficient to conclusively say that a reasonable person would have been aware that a substantial structural flaw or a problem with the pilings existed.

Fourth is State Farm's argument that if the Unit Owners had followed the recommendations contained in the 2002 Myhre Group Architectural Deck Assessment Report, the structural damage inevitably would have been discovered. Even if I accept as true the argument that deck repair would have led to discovery of faulty pilings, State Farm's argument depends on the assumption that it was unreasonable to delay deck repairs after the 2002 report. But I am unwilling to hold, on the facts presented here, that the Unit Owners' delay in making recommended repairs was *necessarily* unreasonable. Instead, whether the delay in making repairs was unreasonable is a question for the jury.

Fifth, the inference to be drawn from the failure of the 2007 Myhre Property Evaluation to mention the pilings *at all* is similarly a question for the jury. The Unit Owners argue that because the expert evidence makes no mention of any potential issues with the pilings a reasonable person would not have discovered the issue with the pilings and would not have inquired further into the pilings. (Pl.'s Supp. Br. [29] 5–6). I agree that a reasonable factfinder could draw varying conclusions as to whether a reasonable person should have known there were issues with the pilings before 2009 based on the expert evidence. Competing rational inferences do not warrant summary judgment.

And finally, in regards to the individual owners' surveys taken as part of the 2007 Myhre Report, it is unclear what those surveys would connote to a reasonable person in light of having received what was supposed to be a comprehensive report on the entire property as discussed above.

7 – OPINION AND ORDER

State Farm has put forth significant evidence that the Unit Owners should have discovered the pilings problems before 2009, or at least should have made further inquiry into the pilings. But because the issue turns on debatable inferences from the undisputed facts, the issue is not to be decided on summary judgment. *See Parker*, 247 F.3d at 5 (despite the fact that homeowner "conceivably … should have known" that cracks in the walls and changing texture of walls represented a substantial structural flaw, a "reasonable factfinder could draw varying conclusions as to whether a reasonable person should have known" and thus summary judgment not appropriate). Viewing the evidence in the light most favorable to the Unit Owners, there are genuine issues of material fact for trial.

## CONCLUSION

For the foregoing reasons, I GRANT IN PART State Farm's motion for judgment on the pleadings, and alternatively, for summary judgment [5]. That motion is granted as to the policy in effect after November of 1999 but denied as to the policy in effect before November of 1999.

IT IS SO ORDERED.

DATED this _29th_ day of September, 2011.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court